**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas Michael MARTINEZ,**
**Defendant-Appellant.**

**No. 74–1227.**

United States Court of Appeals,
Tenth Circuit.

Dec. 16, 1974.

Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff-appellee.

Jack L. Love, Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

Thomas Michael Martinez was charged in a single count indictment with possession of a quantity of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Pretrial motions attacking the validity of the statute and the indictment were filed. There was also a motion to suppress a quantity of marijuana seized in an alleged unlawful search. These motions were all denied. The case was then submitted to the court without a jury upon a stipulation of facts including the use of the evidence offered by the parties at a hearing on a motion to suppress. The court found Martinez guilty and sentenced him to five years probation.

The constitutionality of 21 U.S.C. § 841(a)(1) is attacked on the ground of vagueness insofar as it charges an offense with intent to distribute a controlled substance. With reference to a similar argument, the constitutionality of the section was discussed by this court in United States v. King, 485 F.2d 353, 357 (10th Cir. 1973), where it was said:

. . . [T]hat § 841(a) is constitutionally deficient because it fails to state "how much" of the controlled substance is necessary to permit the inference that the possessor had an intent to distribute. We deem this argument of the alleged vagueness of the statute to be without merit. The statute clearly, and without vagueness, makes unlawful the possession of any controlled substance with an intent to distribute. The question as to the quantity which would permit the inference that the possessor had an intent to distribute is evidentiary in nature and necessarily depends upon all the facts and circumstances of the case at hand, and mention thereof in the statute is entirely unnecessary.

The *King* case also disposes of the contention that 21 U.S.C. § 841(b)(4) is un-

constitutionally ambiguous because that section provided that the distribution of a small amount of marijuana without remuneration shall be treated as provided in another section of the statute. As in the *King* case, the indictment in this case, in clear and concise language, charges an offense under § 841(a)(1), not § 841(b)(4). Our research has disclosed no cases holding that the statute is unconstitutional or that a similar indictment is insufficient.

A more serious question is whether the recovery of the marijuana thrown from the Martinez car resulted from an unlawful search. The recovery was made by an officer of the United States Border Patrol about fifteen miles from the border between Mexico and the State of New Mexico. The trial court held that the seizure of the marijuana was not the result of a "roving search" as condemned in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). We agree.

■ At about 6:30 in the evening of December 8, 1973, a border patrol officer, while patrolling a road west of Columbus, New Mexico, along the Mexican border, was notified over the patrol radio system by an inspector at the established port of entry facilities located near Columbus that a small light blue car with a taillight missing, driven by a female, was about to pick up a "load." The term "load" was used to designate aliens unlawfully in the United States. Shortly thereafter the officer observed an automobile of that description about 1½ miles from the border proceeding easterly on the border road toward the town of Columbus. He followed the vehicle into the westerly edge of Columbus, where it turned onto another road leading northward to Deming, New Mexico, thereby avoiding the port of entry at Columbus. Between 10 and 20 miles north of Columbus the vehicle turned off the road and stopped in a wide parking space. The patrolman also stopped and approached the Volkswagon station wagon where he requested identification papers of the occupants. Martinez produc-

ed his driver's license and stated that he was an American citizen. The female stated that she was born in Japan but was an American citizen. After observing that the back portion of the station wagon was empty, the officer saw that the space between the front and back seats was filled with something covered by a blanket. There was room in that space where two or three humans could be hidden under the blanket. The officer lifted the blanket to ascertain if there were any persons hidden there. He found that the space was filled with suitcases and clothing. Martinez quickly entered the vehicle and drove away. Within a short distance the patrolman observed a leather bag thrown from the window of the car, which he recovered, and found that it contained a substantial amount of marijuana. Martinez later returned to the same place where he and the patrol officer had formerly met and he was placed under arrest.

We think that the patrol officer's conduct here was well within his right to approach Martinez and investigate the possibility that a crime was being committed. In United States v. Bowman, 487 F.2d 1229 (10th Cir. 1973), a border patrol officer stopped an automobile within 100 miles of the border to determine if aliens illegally in the United States were being transported in the vehicle driven by Bowman. While in the process of making inquiry, the experienced patrolman detected the odor of marijuana and proceeded to search the car. This court held that the initial stopping of the car was not a violation of constitutional rights and that after the stop, the smell of marijuana constituted probable cause to make the search. The court said:

. . . Immigration officers are authorized under 8 U.S.C. § 1357(a)(1) to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." The constitutionality of this provision has been consistently upheld. Fernandez v. United States, 9 Cir., 321 F.2d 283; United States v. Correia, 3 Cir.,

207 F.2d 595; United States v. Montez-Hernandez, E.D.Cal., 291 F.Supp. 712. The brief detention of a motorist for the purpose of determining his nationality has also been upheld without resort to this statutory provision. Contreras v. United States, 9 Cir., 291 F.2d 63. While the *Almeida-Sanchez* decision refers to 8 U.S.C. § 1357(a) generally, it is clear from both the reasoning and language of the majority opinion that it is the limitations of 8 U.S.C. § 1357(a)(3) specifically which are brought into question, for only that subsection authorizes the search and seizure which the Court found constitutionally impermissible under the facts of that case. We therefore do not read the Court's decision as challenging the right of immigration officials to make routine inquiries as to an individual's nationality. (487 F.2d at 1231)

The Ninth Circuit disagrees with the *Bowman* decision, believing that it is inconsistent with the *Almeida-Sanchez* decision. See United States v. Brignoni-Ponce, 499 F.2d 1109 (1974). We do not, however, construe *Almeida-Sanchez* as designed to strip border patrol officers of all authority under statute 8 U.S.C. § 1357(a) to briefly detain and interrogate those suspected of illegal entry, and to make a reasonable investigation for reasons not reaching the level of probable cause for the purpose of ascertaining their citizenship status and their right to remain in the United States. Nor do we think that the decision has any effect on the right of an officer of the law in the course of his duties, under appropriate circumstances, to approach and question persons as to possible crimes, even though there are insufficient grounds at the time for an arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Nevarez-Alcantar, 495 F.2d 678 (10th Cir. 1974); United States v. Granado, 453 F.2d 769 (10th Cir. 1972); United States v. Saldana, 453 F.2d 352 (10th Cir. 1972); United States v. Sanchez, 450 F.2d 525 (10th Cir. 1971).

The record discloses that in the instant case the border patrol officer was one of long experience in border patrol activities. For the past four years he had been assigned to the border near Columbus, New Mexico. That area had been particularly plagued with unlawful entries into the United States. Thousands had been arrested there, including more than 1,000 by the officer over the last four years. At the time that he first observed the Martinez car he was patrolling the road paralleling the border, which was about 1½ miles away. He had received notice to be on the lookout for that car. After following it to a point where it stopped, he made a routine check as to the citizenship of the occupants and observed from the outside the visible contents of the vehicle. Aside from the lifting of the blanket, no search was made, and the flight of Martinez and his attempt to dispose of the marijuana in his possession were his own voluntary acts. Under the circumstances, there was no violation of Martinez' Fourth Amendment rights.

Other assignments of error have been considered and found to be without merit.

Affirmed.