517 So.2d 110 (1987)
Octavio GOMEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-2812.
District Court of Appeal of Florida, Third District.
December 29, 1987.
*111 Sharpstein & Sharpstein and Janice Burton Sharpstein and Richard Sharpstein, Coconut Grove, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
At the conclusion of processing Gomez after a concededly valid routine traffic stop for lane straddling and suspected DUI, Officer Ramero, of Cuban extraction, noted that the defendant's Spanish accent differed from his own. As a result, he asked Gomez where he was from. Gomez said he was from Colombia but that his papers, which were improperly not on his person, were at home. This led, in immediate sequence, to a trip to the police station and then one to Gomez's home in the company of an INS officer. There a search of the premises, see State v. Monge, 508 So.2d 450 (Fla.3d DCA 1987), revealed 35 kilos of cocaine located in a vehicle. On this appeal from a trafficking conviction entered after a nolo plea which reserved his right to challenge the denial of his motion to suppress the cocaine, Gomez's primary contention is that the officer's question "where are you from?", which started the incriminating ball rolling, was constitutionally unauthorized. We do not agree.
In our view, the innocuous, almost conversational inquiry as to the defendant's place of origin was at best trivial.[1] Even indulging the doubtful assumption that it implicated any constitutionally protected interest at all, but see INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (police request for identification not fourth amendment seizure), it was appropriately incidental to the proper conduct of any Terry or traffic stop which necessarily involves determining the defendant's identity. See § 901.151, Fla. Stat. (1985); Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); U.S. v. Oates, 560 F.2d 45 (2d Cir.1977); cf. State v. Williams, 371 So.2d 1074 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 771 (Fla. 1980). Upon the further supposition that the question involved a specific inquiry as to Gomez's possibly unlawful or criminal immigration status, it was likewise fully justified by the facts known to the officer. U.S. v. Salinas-Calderon, 728 F.2d 1298 (10th Cir.1984), is virtually indistinguishable and highly persuasive. In Salinas-Calderon a trooper who had made a routine traffic stop of the defendant and who had difficulty conversing with him was told by the defendant's wife that he was an immigrant. The officer then asked for the defendant's "green card" and placed him under arrest when it was not forthcoming. The court stated that
the trooper acted lawfully in initially stopping the car based on his suspicion the driver was intoxicated, and not because of the driver's apparent Mexican descent ... [and] that the brief detention and investigatory questioning of the occupants was reasonable and lawful under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellee argues that the state trooper did not have the authority to detain the passengers while he inquired into federal immigration matters, and further, his question about the defendant's green card was based on a mere hunch. These arguments are without merit. A state trooper has general investigatory authority to inquire into possible immigration violations. Moreover, the trooper's question about the green card was reasonable under the circumstances and thus lawful. Terry, 392 U.S. at 19, 88 S.Ct. at 1878-79; United States v. Saldana, 453 F.2d 352 (10th Cir. 1972).
*112 Salinas-Calderon, 728 F.2d at 1301 n. 3. In contrast, Bailey v. State, 319 So.2d 22 (Fla. 1975), upon which defendant relies and in which a totally unfounded inquiry of the passengers in a stopped vehicle followed a fruitless investigation of the driver, has nothing to do with the case before us.
There is no other error. Monge, 508 So.2d at 451; State v. Cobbs, 411 So.2d 212 (Fla. 3d DCA 1982).
Affirmed.
NOTES
[1] On the face of it, it is hard to distinguish such a question from asking how many children the defendant had or what he did for a living. We need not speculate as to whether Gomez would have to respond to any of these questions, including the one which now concerns us, or the consequence of any failure to do so.