[Cite as *State v. Whatley*, 2011-Ohio-2297.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-93 |
| JAMES WHATLEY, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Licking County Court of
                                 Common Pleas Case No. 2010CR0118


JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          May 9, 2011


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

EARL L. FROST 0069328                      ANDREW T. SANDERSON 0066327
Assistant Prosecuting Attorney             21 W. Church St., Ste. 201
20 S. Second St., 4th Fl.                  Newark, Ohio 43055
Newark, Ohio 43055

*Delaney, J.*

{¶1}   Defendant-Appellant James Whatley, Jr. appeals from the judgment of the Licking County Court of Common Pleas, denying his motion to suppress evidence as a result of a traffic stop.

{¶2}   The underlying facts are as follows.  On February 22, 2010, Trooper Mike Wilson of the Ohio Highway Patrol initiated a traffic stop on Interstate 70 after he observed a vehicle traveling above the posted speed limit.  He described the weather as being extremely foggy, "probably the thickest I've ever seen", and stated that visibility was probably 100 to 150 yards.

{¶3}   He approached the vehicle on the right side to maintain his safety due to the weather conditions and also due to the fact that he noticed six occupants in the vehicle.  He did not have back-up at that time.

{¶4}   Trooper Wilson noticed two males in the back seat, a child in the center back seat, a two-year old child in the center front seat with no car seat or seat belt on, a female driver, and a male in the front passenger seat.  The trooper made contact with the driver, who identified herself as being the owner of the vehicle.  She was unable to gather all of the paperwork for the vehicle, stating that some of it was in the trunk.  As the trooper began speaking to her about the lack of car seat for the child, he noticed an odor of burnt marijuana coming out of the vehicle.   After having worked on approximately 1,000 drug cases, he stated that based on his training and experience, he was absolutely positive that the odor he smelled emanating from the vehicle was marijuana.

{¶5} Based on previous experience, Trooper Wilson stated that he became concerned at that time because typically when drugs are involved, guns are as well. He assessed the situation, including having six people in the car, the weather conditions, the odor of marijuana, and the possibility that there were weapons in the vehicle and he called for backup.

{¶6} He asked the other passengers for their identities. The right rear passenger, who turned out to be Appellant, initially identified himself as Mike L. Evans. He also stated that the "L" stood for Leonard.

{¶7} Trooper Wilson then asked the driver to exit the vehicle. As she was walking to the back of the vehicle, she attempted to get into the trunk. She stated it was to "retrieve some documentation." Trooper Wilson stopped her from getting into the trunk and he stated that it seemed very odd that she would try to do so.

{¶8} As Trooper Wilson was attempting to verify the driver's identity, he explained to her that someone would have to be called because there were too many occupants in the vehicle and that the children needed to be in car seats.

{¶9} Sergeant Cosgrove arrived to assist Trooper Wilson. At that time, Appellant was asked to exit the vehicle and was taken to Sergeant Cosgrove's vehicle. Ultimately, all occupants were removed from the vehicle and Trooper Wilson began his search of the interior occupant area of the vehicle. As he was searching the occupant area, Sergeant Cosgrove informed him that Appellant had told her his real identity.

{¶10} Trooper Wilson stated that when a person lies about their identity, it typically causes concern because it means that they are trying to hide something.

{¶11} In the passenger door handle, there was debris of marijuana, green flakes, and small pieces of the stems of marijuana. Once he found the marijuana, he determined that it would be prudent to search the trunk to see whether the marijuana was taken from the occupant area and placed in the trunk. He also stated that given the driver's attempt to gain access to the trunk and the Appellant providing a false name, he felt that a search of the trunk was appropriate. He stated that in his past experience, he has had people try to get into their trunk to access a weapon.

{¶12} As soon as he opened the trunk, lying on top of multiple clothes was a black shirt wrapped around a bulky object. When he picked the object up, he immediately knew it was metallic and believed it to be a firearm. He stated that due to the weight of the object and how long it was, he believed it to be a rifle. When he unwrapped the shirt from the object, he discovered it to be a loaded SKS assault rifle.

{¶13} Appellant admitted that the rifle was his and was placed under arrest for having a weapon under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2). Appellant had prior convictions which prohibited him from having a weapon. Those convictions included an aggravated assault out of Franklin County, Ohio, and possession of crack cocaine out of Pickaway County, Ohio. (Plea Tr. 13). Defense counsel agreed to his prior record as being accurate.

{¶14} Appellant filed a motion to suppress evidence and a hearing was held on May 24, 2010, wherein the above information was presented. The trial court, in a judgment entry dated June 14, 2010, denied Appellant's motion to suppress, rejecting Appellant's argument that the gun should be suppressed on the basis of *State v. Farris* (2006), 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, which held that the odor

of burnt marijuana alone in a vehicle does not provide a sufficient basis to search the trunk of a vehicle. The judge found additional factors in the case at bar that distinguished the present case from *Farris* and overruled the motion.

{¶15} On August 2, 2010, Appellant admitted guilt to the charge of having a weapon under disability. The court then sentenced Appellant to two years in prison and advised him of postrelease control.

{¶16} Appellant raises one Assignment of Error:

{¶17} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

I.

{¶18} In his sole assignment of error, Appellant argues that the trial court erred in failing to suppress evidence obtained as a result of a traffic stop.

{¶19} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶21} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507. An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio* (1968), 391 U.S. 1, 88 S.Ct. 1503. Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 878, 95 S.Ct. 2574, tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that

criminal activity "may be afoot." *United States v. Sokolow* (1989), 490 U.S. 1, 7, 109 S.Ct. 1581 (quoting *Terry*, supra, at 30). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, also, *State v. Chatton* (1984), 11 Ohio St.3d 59, 61, 463 N.E.2d 1237.

{¶22} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable suspicion determination:

{¶23} "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, (2002) 534 U.S.

266, 273, 122 S. Ct. 744, 151 L.Ed.2d 740  (quoting *United States v. Cortez* (1981), 449 U.S. 411, 417-18)

{¶24} In the present case, Appellant conceded that there was reasonable suspicion to stop the vehicle for speeding.  (Tr. 6).  Accordingly, we are left to determine whether the trial court properly denied the motion to suppress the gun found in the trunk based on the events flowing from the initial stop.

{¶25} In *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10, the Ohio Supreme Court determined "* * * that a law enforcement officer, who is trained and experienced in the detection of marijuana, should not be prohibited from relying on his or her sense of smell to justify probable cause to conduct a search for marijuana."  *State v. Moore*, supra, at 51.  Recently, the Eighth District Court of Appeals, in adopting the *Moore* decision, has reaffirmed that the strong smell of marijuana emanating from a vehicle justifies a search of a vehicle, including the trunk, pursuant to the automobile exception to the warrant requirement.  *State v. Williams*, 8th Dist. Nos. 92009, 92010, 2009-Ohio-5553, ¶26.

{¶26} Officers are permitted to remove occupants of vehicles for officer safety in order to conduct a search, so long as they have been lawfully detained.  *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331.

{¶27} Appellant argues that under *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, a police officer does not have the authority to search the trunk of a vehicle based solely on the smell of burnt marijuana emanating from the passenger compartment of a vehicle following a traffic stop. The Court in *Farris* went on to state that, "[n]o other factors justifying a search beyond the passenger compartment

were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment." *Farris*, at ¶52.

{¶28} We find this case to be distinguishable from *Farris*. In this case, the officer testified that he has participated in numerous arrests involving marijuana and he is familiar with the appearance and characteristics of marijuana. Based on his training and experience, it was immediately apparent to the trooper that it was marijuana in the door handle of the car.

{¶29} The Ohio Supreme Court has recognized that "[o]nce a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51, 2000-Ohio-10 (holding that the odor of marijuana justified an automobile search). Additionally, in *State v. Greenwood*, 2nd Dist. No. 19820, 2004-Ohio-2737, the court noted that an officer's observation of marijuana on the passenger seat and floorboard gave him probable cause to believe that the vehicle contained contraband. Therefore, he was entitled to search the entire vehicle, including the trunk and its contents. *Greenwood*, supra, at ¶11, citing *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572.

{¶30} Similarly, we find that in the present case, Trooper Wilson had sufficient probable cause to search the trunk of the vehicle. He smelled burnt marijuana and found marijuana in the passenger compartment of the car in plain view. In addition, Appellant gave him a false name, and the driver of the vehicle made an attempt to get into the trunk as she was walking towards Trooper Wilson's cruiser.

{¶31}  Appellant's assignment of error is overruled.

{¶32}  The judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.

Hoffman, P.J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

[Cite as *State v. Whatley*, 2011-Ohio-2297.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAMES WHATLEY JR. | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-93 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER